NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANTONIO VELASQUEZ-CRUZ, *Appellant.*

No. 1 CA-CR 23-0365
FILED 05-30-2024

Appeal from the Superior Court in Yuma County
No. S1400CR202001141
The Honorable Roger A. Nelson, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Emily Tyson-Jorgenson
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Robert Trebilcock
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Michael J. Brown joined.

---

**T H U M M A**, Judge:

¶1        Defendant Antonio Velasquez-Cruz appeals his convictions and resulting prison sentences for first degree murder involving domestic violence and second degree murder, both Class 1 felonies. Because Velasquez-Cruz has shown no reversible error, his convictions and sentences are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        Velasquez-Cruz had shared a home in rural Yuma County with a significant other and her adult son, S.Z. On November 7, 2020, the bodies of S.Z. and his friend, T.F., were found in the home. S.Z. died as a result of more than thirty wounds inflicted by a sharp object, while T.F. was killed by a stab wound to the chest. Lab testing revealed that both men were very intoxicated with alcohol when they were killed. After a series of 9-1-1-calls, law enforcement arrived on the scene, noting the two victims in the kitchen, a bloody knife in the sink and a bloody "Stanley folding knife" in a kitchen cabinet. A few days later, law enforcement found Velasquez-Cruz with some blood on his clothes at a neighbor's house. When interviewed, Velasquez-Cruz explained that he had been in the house while the two victims argued and had gotten some blood on his shoes.

¶3        After further investigation, Velasquez-Cruz was indicted on charges of first degree murder involving domestic violence for the death of S.Z. and second degree murder for the death of T.F. The matter went to trial in May 2023.

¶4        On the third day of trial, the State's detective testified about the blood and blood spatter found at the scene. After the detective finished testifying, Velasquez-Cruz requested a mistrial because the detective "was not noticed as an expert on blood spatters or blood analysis." Determining the detective was not testifying as an expert, the court denied the motion.

¶5        The next day at trial, S.Z.' mother testified, and identified the Stanley folding knife found at the scene as belonging to Velasquez-Cruz.

After the State finished its direct examination, Velasquez-Cruz moved for a mistrial again, arguing that the State had never made any disclosure that the Stanely folding knife belonged to him. The State responded that it had not violated its disclosure obligations, in part because it had first learned about this testimony fifteen minutes before the witness testified. Although agreeing that the State should have disclosed the information before offering the testimony, the court found that lack of disclosure was not grounds for a mistrial or to strike the testimony.

¶6        When Velasquez-Cruz raised the issue later, the court again found that he was not prejudiced by the lack of disclosure. The court did, however, allow Velasquez-Cruz to call a witness, who testified that the Stanley folding knife belonged to T.F.

¶7        After the State rested its case in its case in chief, Velasquez-Cruz moved for a judgment of acquittal, arguing that there was "no substantial evidence to support conviction." The court denied the motion, finding that "there is some substantial evidence that the jury could make a finding that the defendant is guilty beyond a reasonable doubt," pointing to evidence presented by the State, including DNA evidence "on [the] purported murder weapon," Velasquez-Cruz' conflicting statements to law enforcement, his bloody boots found at the scene and the blood on his clothing when police found him.

¶8        After ten days of trial, the jury found Velasquez-Cruz guilty as charged. The court sentenced Velasquez-Cruz to consecutive prison terms of natural life for the first degree murder conviction and 16 years for the second degree murder conviction, properly awarding him 997 days of presentence incarceration credit.

¶9        This court has jurisdiction over Velasquez-Cruz' timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031 and 13-4033(A)(2024).[1]

## DISCUSSION

¶10        Because the superior court is in the best position to determine the effect of a witness' remarks on the jury, this court reviews the denial of a motion for mistrial for an abuse of discretion. *State v. Koch*, 138 Ariz. 99, 101 (1983). Recognizing a mistrial is an extreme remedy, a court will grant

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

a mistrial only when the improper testimony is so prejudicial that it is likely to lead the jurors to convict a defendant that they otherwise would have acquitted. *See State v. Prince*, 204 Ariz. 156, 160 ¶ 20 (2003); *State v. Celaya*, 135 Ariz. 248, 256 (1983).

## I.     The Court Did Not Err in Denying Velasquez-Cruz' Motions for Mistrial.

### A.     Expert Testimony.

**¶11**          Velasquez-Cruz claims the court erred in denying his motion for mistrial because "[t]he State failed to disclose its lead detective as an expert witness in blood spatter and elicited expert testimony without qualifying him as an expert in that discipline." Much of the detective's testimony, however, was admitted without objection. Velasquez-Cruz did not object to the lack of expert disclosure until *after* the State had completed its direct examination of the detective. *State v. Escalante*, 245 Ariz. 135, 138 ¶ 1 (2018) ("When a defendant fails to object to trial error, he forfeits appellate relief absent a showing of fundamental error"); Ariz. R. Evid. 103(a) (requiring, among other things, a timely objection to preserve claims of evidentiary error). When a criminal defendant fails to timely and specifically object, review on appeal is limited to fundamental error. *See* Ariz. R. Evid. 103(e); *Escalante,* 245 Ariz. at 138 ¶ 1. "Accordingly, [defendant] 'bears the burden to establish that "(1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice."'" *State v. James*, 231 Ariz. 490, 493 ¶ 11 (App. 2013) (citations omitted).

**¶12**          Velasquez-Cruz' argument on appeal rests, in substantial part, on the assertion that the detective provided expert testimony under Ariz. R. Evid. 702, meaning expert disclosures under Ariz. R. Crim. P. 15.1(b)(4) were required.

**¶13**          It is undisputed that the State did not provide expert disclosures for the detective. The superior court, however, concluded that the detective did not provide expert testimony. That finding is reviewed for an abuse of discretion. *State v. Fuentes*, 247 Ariz. 516, 524 ¶ 28 (App. 2019) ("The question of whether a lay witness is qualified to testify as to any matter of opinion is a preliminary determination within the sound discretion of the trial court") (quoting *Groener v. Briehl*, 135 Ariz. 395, 398 (App. 1983).

**¶14**          In denying Velasquez-Cruz' motion for mistrial based on the detective's testimony, the court explained and concluded that:

> [The detective] is not testifying as an expert, but he is an investigator that is reviewing evidence on scene. . . . He is not arriving at the ultimate conclusion. What he is doing is observing the different pieces of evidence that are there and making an observation of how that particular piece of evidence may have gotten there, the direction that it traveled. That's all [] he is doing.

Much of the detective's testimony was fact (or percipient) testimony based on the detective's own personal knowledge and was not arguably expert testimony. *See* Ariz. R. Evid. 601, 602. It is true that some of the detective's testimony appears to at least come close to expert testimony under Ariz. R. Evid. 702. But this court on appeal owes deference to the trial court's conclusion that, instead, the testimony was either fact testimony or lay witness opinion testimony under Rule 701, and not expert testimony under Rule 702. *Cf. Cannon*, 86 Ariz. at 178. This deference is particularly appropriate in cases like this where the difference between lay witness opinion evidence under Rule 701 and expert opinion testimony under Rule 702 is not necessarily pristine. As applied, Velasquez-Cruz has not shown that the trial court abused its discretion in concluding that the testimony provided by the detective was not expert opinion evidence under Rule 702, which would have required disclosure under Ariz. R. Crim. P. 15.1(b)(4).

¶15 Velasquez-Cruz further argues that the court's denial of his motion for mistrial based on the detective's testimony "violated [his] rights to both present a complete defense and rights to due process." Velasquez-Cruz has a Constitutional right to have an opportunity to present a complete defense, subject to his compliance with constitutional procedural rules. *See Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (citing cases). As discussed above, he was not denied that right consistent with the applicable procedural rules. And he does not claim those rules are unconstitutional.

¶16 His due process claim rests in large part on -- and assertion that -- the State precluded an effective interview of the detective before trial. Velasquez-Cruz, however, did interview the detective before trial and asked and received answers to questions about the evidence the detective encountered. During the detective's interview, the State objected to questions about what the evidence meant ("So, what is the evidence that indicates that Mr. Velasquez Cruz stabbed, let's say, we'll start with [S.Z.].") Based on those objections, Velasquez-Cruz moved to compel discovery, which the court denied, apparently based on the State's argument that Velasquez-Cruz was asking questions implicating attorney work product.

Velasquez-Cruz has not shown that ruling was error. Along with his pretrial interview of the detective, Velasquez-Cruz presented his own expert witness at trial to testify to the blood and blood spatter at the scene. On this record, Velasquez-Cruz has not shown how failing to notice the detective as an expert was error, let alone error resulting in prejudice.

## B.     Failure to Disclose New Evidence.

**¶17**          Velasquez-Cruz argues that the court erred in denying his motion for mistrial arising out of the testimony of S.Z.' mother as to the ownership of the Stanley folding knife "because the State failed to disclose new material testimony regarding ownership of the suspected murder weapon before it elicited that information before the jury." Velasquez-Cruz argues that the court also erred in denying his motion to strike that evidence.

**¶18**          Velasquez-Cruz, however, failed to make a timely objection at trial. The witness' identification of the knife as belonging to Velasquez-Cruz came in without objection, and Velasquez-Cruz did not challenge this testimony until after the State finished its direct examination of the witness. Because Velasquez-Cruz failed to make a timely objection, review on appeal is limited to fundamental error. *See* Ariz. R. Crim. P. 21.3(c); *State v. Henderson*, 210 Ariz. 561, 567 ¶¶ 19-20 (2005). Accordingly, he bears the burden of establishing prejudice. *James*, 231 Ariz. at 493 ¶ 11 (citations omitted).

**¶19**          Even if Velasquez-Cruz had made a timely objection, the decision to preclude evidence because of untimely disclosure is within the discretion of the court. *See State v. Rienhardt*, 190 Ariz. 579, 586 (1997). This court will overrule the superior court's decision only if the defendant shows the delayed disclosure resulted in prejudice. *Id.*

**¶20**          While the court admonished the State for failing to disclose the witness' testimony before she got on the stand, it found that such a lack of disclosure was not grounds for a mistrial:

> [The State] should have told the defense when you found out. It's not grounds for a mistrial. It's not information that was known prior to the trial beginning. It's not exculpatory evidence, but you should have told [Velasquez-Cruz' attorney].

6

The court added that Velasquez-Cruz was not prejudiced by the testimony, because "it doesn't matter. The State's correct in that, it doesn't matter who the knife belonged to. This was his house. Everything in there belonged to him or was used by him, and so it carries very little weight that the knife belonged to him." Even so, the court allowed Velasquez-Cruz to present his own witness to counter the contested testimony and identify the knife as belonging to someone else.

¶21 Velasquez-Cruz also argues that the court erred in choosing not to sanction the State for its failure to disclose. However, absent an abuse of discretion, this court "will not disturb the trial court's choice of sanction or its decision not to impose a sanction." *State v. Towery*, 186 Ariz. 168, 186 (1996). "Denial of a sanction is generally not an abuse of discretion if the trial court believes the defendant will not be prejudiced." *Id.* Here, the court found that Velasquez-Cruz was not prejudiced by the State's failure to disclose the testimony before direct examination. On this record, Velasquez-Cruz has shown no error.

## II. The Court Did Not Err in Denying Velasquez-Cruz' Motion for Judgment of Acquittal.

¶22 A judgment of acquittal is appropriate only "if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a). Substantial evidence is such proof that "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Jones*, 125 Ariz. 417, 419 (1980). This court views the evidence in the light most favorable to sustaining the verdict, resolving all inferences against the defendant. *State v. Davolt*, 207 Ariz. 191, 212 ¶ 87 (2004). "The sufficiency of the evidence must be tested against the statutorily required elements of the offense." *State v. Pena*, 209 Ariz. 503, 505 ¶ 8 (App. 2005).

### A. Mere Presence.

¶23 Velasquez-Cruz argues the court should have granted his motion for judgment of acquittal because "[t]he most that a reasonable jury could find at the close of the State's case was that [he] was merely present around the scene where the fatal altercation took place."

¶24 For first degree murder, the State had to prove beyond a reasonable doubt that "[i]ntending or knowing that the person's conduct will cause death, [Velasquez-Cruz] cause[d] the death of another person . . . with premeditation." A.R.S. § 13-1105(A)(1). To support the second degree murder conviction, the evidence had to show that, without premeditation,

Velasquez-Cruz "intentionally causes the death of another person" or "[k]nowing that the person's conduct will cause death or serious physical injury, the person causes the death of another person," or "[u]nder circumstances manifesting extreme indifference to human life, the person recklessly engages in conduct that creates a grave risk of death and thereby causes the death of another person." A.R.S. § 13-1104(A)(3).

¶25　　　The trial evidence included that Velasquez-Cruz' blood was found on both the blade and handle of a Stanley folding knife, along with blood from one of the victims. Velasquez-Cruz' DNA was also found on a kitchen knife in the sink and a bloody tank top from the scene. The shoes Velasquez-Cruz' was wearing when police found him are the same shoes that left an impression in the victims' blood at the scene. When questioned by police, Velasquez-Cruz had a deep cut on his hand that he claimed to be from falling on gravel, but officers believed the straight cut looked like an "offensive injury." The State offered testimony that Velasquez-Cruz "said he did not handle any of the knives in the residence" even though his DNA was found on the knives. The State also presented testimony that Velasquez-Cruz' recollection of what happened that night was inconsistent, and that his story would shift when questioned by law enforcement and when speaking to other witnesses. Thus, the State presented sufficient evidence to support a jury's finding that Velasquez-Cruz was not "merely present" at the scene of the murders.

### B.　　Premeditation.

¶26　　　Velasquez-Cruz also argues that "[t]he State failed to provide substantial evidence that the murder [of S.Z.] was done with premeditation." Premeditation exists when "the defendant acts with either the intention of the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by any length of time to permit reflection." A.R.S. § 13-1101. "The necessary premeditation . . . may be as instantaneous as successive thoughts of the mind and may be proven by either direct or circumstantial evidence." *State v. Kreps*, 146 Ariz. 446, 449 (1985). Premeditation can be shown in a variety of different ways. *See State v. Gulbrandson*, 184 Ariz. 46, 65 (1995) (finding substantial evidence of premeditation where "the murder itself was protracted, brutal, and involved a sustained attack on the victim"); *see also State v. VanWinkle*, 230 Ariz. 387, 392 (2012) (similar).

¶27　　　Noting that this court "does not substitute its judgment for that of the jury," *Gulbrandson*, 184 Ariz. at 65, there was sufficient evidence for a reasonable jury to find that Velasquez-Cruz stabbed S.Z. with

premeditation. The State presented evidence that S.Z. was stabbed more than 30 times, with wounds to both his chest and back, including some defensive wounds. The crime scene also indicated a struggle, with somebody "on the ground trying to get back up or trying to get away from somebody and they are slipping in the blood."

¶28        Velasquez-Cruz asserts that "the mere number of wounds cannot be the sole basis to prove premeditation." However, the number of stab wounds, along with the indications of a bloody struggle, could support a conclusion that this was a "protracted, brutal, and . . . sustained attack on the victim." *Gulbrandson*, 184 Ariz. at 65. Additionally, stabbing S.Z. more than 30 times and struggling with him such that he had several defensive wounds would likely have taken "several minutes," much like the murder in *State v. Davolt*, 207 Ariz. 191, 212 ¶ 90 (2004).

¶29        Viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Accordingly, the court did not err in denying Velasquez-Cruz' motion for judgment of acquittal.

## CONCLUSION

¶30        Velasquez-Cruz' convictions and sentences are affirmed.

